**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

FRANCIS SCHOBERG,                *

     *Plaintiff,*               *

    v.                   *       Civil Action No. RDB-23-2852

PHILLIP L. SCHWARTZMAN     *
and VINCENT J. MICELI,

                         *

     *Defendants.*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

This state and federal civil rights action arises from a 2019 interaction between Plaintiff Francis Schoberg ("Plaintiff" or "Mr. Schoberg") and Baltimore County Police officers. On July 30, 2019, Mr. Schoberg entered a Giant Food grocery store ("Giant") in Catonsville, Maryland, wearing clothing and accessories related to his employment at a private security company. Specifically, Mr. Schoberg wore a shirt emblazoned with the word "POLICE" on its front, back, and sleeves, and a handgun in a holster, among other items. Defendant and off-duty Baltimore County Police Officer Vincent J. Miceli ("Officer Miceli"), was working secondary employment as a uniformed security guard at the Giant and approached Mr. Schoberg about his status as a police officer. Based on this conversation, Officer Miceli requested back-up from on-duty Baltimore County Police officers, including Defendant Phillip L. Schwartzman ("Officer Schwartzman") (collectively with Officer Miceli, "Defendants"). Ultimately, the officers arrested Mr. Schoberg for impersonating a police officer and seized his firearm and other items. Following his arrest, Mr. Schoberg was incarcerated from July 30, 2019, until August 1, 2019. On July 31, 2019, Officer Schwartzman

filed a Statement of Charges charging Mr. Schoberg with a misdemeanor offense of impersonating a police officer under Maryland law.  On June 30, 2020, the Baltimore County State's Attorney entered a nolle prosequi[1] in the criminal case against Mr. Schoberg.  As explained in great detail below, this case shall proceed to trial on three claims alleging malicious prosecution and civil conspiracy.

Mr. Schoberg initiated the instant action on June 30, 2023, almost four years after the incident, by filing in the Circuit Court for Baltimore County, Maryland, a seven-Count Complaint against Original Defendants Baltimore County, Maryland; Officer Schwartzman; Officer Miceli; Giant Food, LLC ("Giant"); and Wolf Professional Security, Inc. ("Wolf") (collectively, "Original Defendants").  (ECF No. 7.)  Original Defendants removed the action to this Court based on federal question jurisdiction.  (ECF No. 5.)  Mr. Schoberg then filed the operative Amended Complaint (ECF No. 25) against Original Defendants, alleging (1) false imprisonment (Count I); (2) malicious prosecution (Count II); (3) abuse of process (Count III); (4) violation of Article 24 and Article 26 of the Maryland Declaration of Rights: false arrest, due process (Count IV); (5) violation of the Second, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution (Count V); (6) a 42 U.S.C. § 1983 claim for violation of Plaintiff's Second, Fourth, Fifth, and Fourteenth Amendment Rights and Privileges under the United States Constitution—Pattern and Practice, Policy, and Custom (Count VI); (7) a 42 U.S.C. § 1983 claim for Negligent Supervision, Training, Retention, and

---

[1] As this Court noted in a previous Memorandum Opinion in this case, Maryland's highest court has "defined entering a nolle prosequi 'as an official declaration by the State, announcing that it will not pursue the charges in a particular charging document.'"  *See* (ECF No. 58 at 5 n.1 (quoting *State v. Simms*, 175 A.3d 681, 685 (Md. 2017))); Md. Rule 4-247 ("The State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court.").

Custom or Policy of Deliberate Indifference (Count VII); (8) Intentional Infliction of Emotional Distress (Count VIII); (9) Civil Conspiracy (Count IX); and (10) 42 U.S.C. § 1985(3) violation (Count X). *See* (ECF No. 25). Following Original Defendants' Motions to Dismiss the Amended Complaint, *see* (ECF Nos. 33, 37, 38), this Court dismissed all claims against Baltimore County; Giant; and Wolf, but denied dismissal of Counts II, III, IV, V, and IX as to Officers Miceli and Schwartzman. *See* (ECF Nos. 58, 59.) Mr. Schoberg then filed a Motion for Summary Judgment (ECF No. 69), which this Court denied without prejudice and subject to refiling, (ECF No. 78).

Presently pending before this Court are several motions filed by the parties, including: (1) Plaintiff's Supplemental Motion for Summary Judgment (ECF No. 97) ("Plaintiff's Supplemental Motion"); (2) Defendants' Motion for Summary Judgment (ECF No. 98) ("Defendants' Motion"); and (3) Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment (ECF No. 101) ("Plaintiff's Motion to Strike"). Defendants have responded in Opposition to Mr. Schoberg's Motion to Strike (ECF No. 103). Defendants have not filed an opposition to Mr. Schoberg's Supplemental Motion but argue in their briefing that the Supplemental Motion is improper. *See* (ECF No. 98-1 at 2). The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, Mr. Schoberg's Motion to Strike (ECF No. 101) is DENIED; Mr. Schoberg's Supplemental Motion for Summary Judgment (ECF No. 97) is DENIED; and Defendants' Motion for Summary Judgment (ECF No. 98) is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' Motion for Summary Judgment (ECF No. 98) is DENIED as to Count II (malicious prosecution); Count IV (violation of the Maryland

Declaration of Rights) to the extent it is based on malicious prosecution; and Count IX (civil conspiracy).  Defendants' Motion (ECF No. 98) is GRANTED as to Count II (abuse of process); Count V (violation of 42 U.S.C. § 1983); and Count IV (violation of the Maryland Declaration of Rights) to the extent it is premised on any theory other than malicious prosecution.  This case will proceed to jury trial as scheduled next month, in January 2026.

## BACKGROUND

### I.      Factual Background

On July 30, 2019, Mr. Schoberg entered the Giant grocery store located on Wilkens Avenue in Catonsville, Maryland, wearing a black shirt emblazoned with the word "POLICE" on its front, back, and sleeves and a handgun holstered at his waist.  (ECF No. 98-1 at 2.) Baltimore County Police Department ("BCPD") Officer Miceli was working off-duty, secondary employment as a uniformed security guard at the Giant and approached Mr. Schoberg to question his status as a police officer.  (*Id.*)  Mr. Schoberg explained that he worked for "Hire Police," and provided Officer Miceli with his driver's license, private investigator's permit, and handgun permit.  (*Id.* at 2–3.)  At some point during this interaction, Officer Miceli radioed for backup from on-duty BCPD officers, and an officer ("Unidentified Officer")[2] wearing an activated body-worn camera arrived with several other BCPD officers.

---

[2] At the summary judgment stage, where the parties have submitted video footage and do not dispute the authenticity or legitimacy of such footage, courts should "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).  The parties in this case both purport to have submitted body-worn camera footage from Officer Schwartzman, *see* (ECF No. 69-3 at 1; ECF No. 98 Ex. A), but the body-worn camera footage submitted appears to come from two separate officers.  For clarity, the Court refers to the Officer in the body-worn camera footage that Defendants have submitted (ECF No. 98 Ex. A) as Officer Schwartzman and the officer in the body-worn camera footage that Mr. Schoberg submitted (ECF No. 69 Ex. A) as Unidentified Officer.  It is not readily apparent from the footage whether these officers are the same person or not.  This citation form is adopted solely for clarity and does not reflect the Court's determination as to the identity of either officer.  Separately, Defendants do not offer time-stamped references to the body-worn camera footage.  The Court thus endeavors to provide time-stamped references itself.

(*Id.* at 3.)  By the time these officers arrived, Mr. Schoberg was seated on a bench inside the Giant with Officer Miceli and another BCPD officer standing in front of him.  (ECF No. 69 Ex. A at 00:32.)[3]  His handgun remained holstered at his waist.  (*Id.*)

For at least twenty-two minutes, BCPD officers questioned Mr. Schoberg about his employment, status as a police officer, identification and handgun permit, and presence at the Giant.  Upon Unidentified Officer's arrival, Mr. Schoberg informed officers that he did not have his phone with him.  (*Id.* at 00:45–00:56.)  Unidentified Officer asked Officer Miceli if Mr. Schoberg's gun was loaded, and Officer Miceli stated, "I don't know.  He wouldn't let me take it from him."  (*Id.* at 00:56–00:59.)  Mr. Schoberg explained to the officers that he worked "with Hire Police" and that he was not pretending to be a police officer.  (*Id.* at 1:00–2:16.)  Officer Miceli responded that he understood but that Mr. Schoberg did not cooperate initially.  (*Id.* at 2:17–2:20.)  Officer Miceli stated that Mr. Schoberg was "carrying a loaded weapon," "not in uniform," did "not have a radio on," and wore "nothing that would signify that [he was] actually police."  (*Id.* at 2:20–2:28.)  Unidentified Officer and Officer Miceli then again confirmed that Mr. Schoberg worked for "Hire Police," but that he had not attended "MPTC Academy" and did not have a blue card certifying him as a police officer in the State of Maryland.  (*Id.* at 3:37–4:05.)  Mr. Schoberg confirmed these details, and the officers said they had never heard of "Hire Police," which was likely a security company.  (*Id.* at 3:37–4:12.)  Mr.

---

[3] Defendants argue that this exhibit is not properly before this Court because Plaintiff's original Motion for Summary Judgment (ECF No. 69) was withdrawn without prejudice and subject to refiling.  As explained further below, the Court considers Plaintiff's original Motion for Summary Judgment (ECF No. 69) as refiled based on Plaintiff's filing of his Supplemental Motion (ECF No. 97), which explicitly references his original Motion and its exhibits, is designated on the docket as a motion pending adjudication, and, according to email correspondence submitted by Defendants' counsel, was made known to Defendants via communication from Plaintiff's counsel as early as September 4, 2025.  *See* (ECF No. 103 Ex. A at 1).

Schoberg nodded, stated that the company is called "Hire Police" and that he understood that he is not a police officer. (*Id.* at 4:12–4:14.) Officer Miceli stated that he had never heard of Hire Police, and Mr. Schoberg responded, "they are primarily in the city." (*Id.* at 5:41–5:49.)

Unidentified Officer informed Mr. Schoberg that he was able to retain his firearm solely because Officer Miceli "fe[lt] comfortable" with him retaining it. (*Id.* at 6:21–6:46.) Officer Miceli explained that he originally approached Mr. Schoberg to be friendly, but he became "a little more suspect" when Mr. Schoberg said that he worked for Hire Police without explaining who that was and refused to "let [Officer Miceli] take [his] gun." (*Id.* at 7:51–8:00.) Mr. Schoberg again stated that he was not trying to portray himself "as anything that [he was] not." (*Id.* at 8:20–29.) Unidentified Officer responded that by wearing a shirt bearing the word "POLICE," Mr. Schoberg had inaccurately identified himself as police. (*Id.* at 8:35–8:48.) Mr. Schoberg indicated that he wore the shirt at his employer's instruction because he was on his way to work at a private event in Towson, Maryland. (*Id.* at 8:50–9:15; 10:35–11:20.) Officer Miceli then commented that Mr. Schoberg's holster looked "like something [one] would get at Walmart for an airsoft gun." (*Id.* at 13:22–13:33.)

While these officers were speaking to Mr. Schoberg, Officer Schwartzman arrived at the scene. (ECF No. 98 Ex. A at 00:16.) An unidentified female officer informed him that Mr. Schoberg stated that he was on his way to work but did not have any way to verify his employment. (*Id.* at 00:16–00:48.) Officer Schwartzman confirmed the name of Mr. Schoberg's "agency," and Mr. Schoberg spelled Hire Police for him. (*Id.* at 2:30–2:34.) The unknown female officer noted that Mr. Schoberg had not shown a badge to anyone and appeared to state that she thought it was "questionable." (*Id.* at 4:05–4:37.) Officer

Schwartzman then called Hire Police to confirm Mr. Schoberg's employment, but his body-worn camera footage concluded before he received any confirmation. (*Id.* at 6:19–6:38; 7:19–8:35.) Officers later stated that the person on the other end of the line was Sean Lewis ("Mr. Lewis"), and Mr. Schoberg stated that Mr. Lewis and Bill Edgar are the owners of Hire Police. (ECF No. 69 Ex. A at 20:12–20:33.) According to Defendants, Mr. Lewis confirmed that Mr. Schoberg worked for Hire Police, was required to wear a shirt with the Hire Police logo, and that Hire Police's training and employee handbook advised Mr. Schoberg of this requirement. (ECF No. 98-1 at 3; ECF No. 104-2 at 3–4.)

Approximately a minute later, Corporal McCollum ("Cpl. McCollum") arrived at the scene and Mr. Schoberg was arrested. (ECF No. 69 Ex. A at 19:25–28; ECF No. 104-2 at 4.) With Mr. Schoberg's cooperation, Cpl. McCollum removed and unloaded Mr. Schoberg's gun, (ECF No. 69 Ex. A at 19:29–20:10), which held a live round in the chamber and ten rounds in the magazine, (ECF No. 98-1 at 3). Cpl. McCollum stated that the officers "tried to run out that lead that [Mr. Schoberg was] actually a cop and it [did] not look that way," (ECF No. 69 Ex. A at 20:41–20:56), and Mr. Schoberg reiterated that he was not intentionally trying to misrepresent himself, (*id.* at 20:56–21:19). Officers then seized Mr. Schoberg's pepper spray, expandable baton, handcuffs, flashlight, multipurpose tool, and gold-colored badge with the words "PRIVATE DETECTIVE" on it. (*Id.* at 21:19–22:18; ECF No. 98-1 at 3.) The officers placed Mr. Schoberg in handcuffs and transported him to the precinct. (ECF No. 69 Ex. A at 22:18–22:39.) Ultimately, Mr. Schoberg was detained and incarcerated for two days and was charged with the misdemeanor offense of impersonating a police officer under Maryland's

Public Safety Article 3-502(b).[4]  (ECF No. 98-1 at 3; ECF No. 102-4 at 1.)  After almost one year, on June 30, 2020, the State's Attorney for Baltimore County dismissed the charges against him by entering a nolle prosequi in his case.  (ECF No. 98-1 at 3; ECF No. 102-3.)

## II.    Procedural Background

Almost four years after the incident of July 30, 2019, Mr. Schoberg initiated this action on June 30, 2023, by filing in the Circuit Court for Baltimore County, Maryland, a seven-Count Complaint against Officer Miceli; Officer Schwartzman; Giant Food, LLC ("Giant"); Baltimore County, Maryland ("Baltimore County"); and Wolf Professional Security, Inc. ("Wolf") (collectively, "Original Defendants").  *See* (ECF No. 5-3).  While the matter remained pending in the state court, Wolf and Giant filed separate Motions to Dismiss or for Summary Judgment (ECF No. 5-4 (Wolf); ECF No. 5-5 (Giant)).  On September 28, 2023, the Circuit Court for Baltimore County, Maryland denied in part and held moot in part both motions. (ECF No. 23-99 at 1.)

On October 20, 2023, Defendants removed the action to this Court based on federal question jurisdiction.  *See* (ECF No. 4).  Mr. Schoberg then filed the operative, ten-Count Amended Complaint against Original Defendants, alleging: (1) false imprisonment (Count I); (2) malicious prosecution (Count II); (3) abuse of process (Count III); (4) violation of Article 24 and Article 26 of the Maryland Declaration of Rights: false arrest, due process (Count IV); (5) violation of the Second, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution (Count V); (6) a 42 U.S.C. § 1983 claim for violation of Plaintiff's Second, Fourth,

---

[4]  It appears from the record that subsequent weapons charges were brought against Mr. Schoberg, and the State's Attorney also entered a nolle prosequi as to those charges on June 30, 2020.  (ECF No. 102-3 at 2.)

Fifth, and Fourteenth Amendment Rights and Privileges under the U.S. Constitution—Pattern and Practice, Policy, and Custom (Count VI); (7) a 42 U.S.C. § 1983 claim for Negligent Supervision, Training, Retention, and Custom or Policy of Deliberate Indifference (Count VII); (8) Intentional Infliction of Emotional Distress (Count VIII); (9) Civil Conspiracy (Count IX); and (10) 42 U.S.C. § 1985(3) violation (Count X). (ECF No. 25). Original Defendants filed Motions to Dismiss the Amended Complaint, *see* (ECF Nos. 33, 37, 38), and this Court dismissed all claims against Baltimore County; Giant; and Wolf but denied dismissal of Counts II, III, IV, V, and IX as to Officers Miceli and Schwartzman. (ECF Nos. 58, 59.)

Defendants then filed a Motion for Reconsideration (ECF No. 60) of this Court's Order (ECF No. 59) denying dismissal on the basis that the Court failed to rule on a qualified immunity defense that they raised in a footnote of their Motion to Dismiss, *see* (ECF No. 37-1 at 15 n.1). *See* (ECF No. 60-1). On February 21, 2025, Mr. Schoberg filed a Motion for Summary Judgment (ECF No. 69). This Court denied Defendants' Motion for Reconsideration, including their qualified immunity defense. *See* (ECF No. 71 at 9–10). Following an off-the-record telephone conference and by agreement of all counsel, Mr. Schoberg's Motion for Summary Judgment (ECF No. 69) was withdrawn without prejudice and subject to refiling, and this Court set a dispositive pretrial motions deadline of September 9, 2025, and a one-week jury trial to begin January 12, 2026. (ECF No. 78.) Defendants then filed a Motion to Stay (ECF No. 80) proceedings pending their interlocutory appeal of qualified immunity to the U.S. Court of Appeals for the Fourth Circuit. This Court denied that motion via Memorandum Order dated June 11, 2025, (ECF No. 86), and the Fourth

Circuit denied Defendant-Appellants' Motion for a stay pending appeal, (ECF No. 93).  On July 22, 2025, Defendant-Appellants voluntarily dismissed that appeal.  (ECF No. 94).

On September 8, 2025, Mr. Schoberg timely filed a Supplemental Motion for Summary Judgment (ECF No. 97) ("Plaintiff's Supplemental Motion") but did not refile his original Motion for Summary Judgment (ECF No. 69).  On September 22, 2025, Defendants filed their Motion for Summary Judgment (ECF No. 98) ("Defendants' Motion").  Mr. Schoberg then filed a Motion to Strike (ECF No. 101) ("Mr. Schoberg's Motion to Strike") Defendants' Motion as untimely and separately filed an Opposition (ECF No. 102).  Defendants responded in Opposition (ECF No. 103) to Mr. Schoberg's Motion to Strike and replied (ECF No. 104) in Support of their Motion for Summary Judgment.  This matter is now ripe for review.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a court's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter for resolution at trial. *Id.* at 249.  Trial courts in the Fourth Circuit have an "affirmative obligation ... to prevent factually unsupported claims

and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Judd*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 380 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *accord Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (citing *Anderson*, 477 U.S. at 249). To survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That is, the nonmoving party bears the burden to submit evidence that is "significantly probative" as to a genuine issue of material fact. *Anderson*, 477 U.S. at 249–50.

When both parties file motions for summary judgment, this Court applies the same standard of review to both motions, considering "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. North Carolina Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)). "[B]y the filing of a motion [for summary judgment,] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (citation omitted); *see also*

*Sherwood v. Washington Post*, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989) ("[N]either party waives the right to a full trial on the merits by filing its own motion . . . ."). "However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they 'may be probative of the non-existence of a factual dispute.'" *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620, 624 (D. Md. 2013) (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)); *Georgia State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015).

## ANALYSIS

### I.    Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment

In his Motion to Strike (ECF No. 101), Mr. Schoberg asserts that Defendants' Motion for Summary Judgment (ECF No. 98) should be stricken as untimely because it was filed fourteen days after the pretrial dispositive motions deadline set in this case.[5]  *See* (ECF No. 101 at 1–3).   In Opposition (ECF No. 103), Defendants contend that Mr. Schoberg's untimeliness argument is "frivolous" because, pursuant to Local Rule 105.2(c) (D. Md. 2025), they notified Plaintiff's counsel of their intent to file a cross-motion for summary judgment fourteen days after Plaintiff filed his Motion.  (ECF No. 103 at 2–3.)  Although Defendants' Motion is untimely under this Court's Amended Scheduling Order (ECF No. 78) and Local Rule 105.2(a), the Court in its discretion considers the Motion.

---

[5]  In his Motion to Strike, Mr. Schoberg argues that "Defendants' reliance on unauthenticated case report and unsworn factual summaries in support of their motion for summary judgment requires exclusion."  (ECF No. 101 at 3.)  Such arguments go to Defendants' ability to meet their burden under Federal Rule of Civil Procedure 56, not to whether their Motion for Summary Judgment is properly filed.  *See, e.g.*, *Butler v. Wash. Metro. Area Transit Auth.*, Civ. No. AAQ-22-2711, 2025 WL 1018942, at *4 (D. Md. Apr. 4, 2025) (discussing circumstances in which court can consider evidence submitted at summary judgment stage).

Local Rule 105.2(a) provides that "[a]ll *motions must be filed within deadlines set by the Court. Unless otherwise ordered by the Court*, all memoranda in opposition to a motion shall be filed within fourteen (14) days of service of the motion . . . ." *Id.* 105.2(a) (D. Md. 2025) (emphasis added). This Court's Amended Scheduling Order (ECF No. 78) required that pretrial dispositive motions in this case be filed by September 9, 2025, such that under Local Rule 105.2(a), pretrial dispositive motions had to be filed by that deadline. As both this Court and the Fourth Circuit have explained, however, district courts have discretion to consider untimely motions for summary judgment in the interest of judicial economy where there is no prejudice to the nonmovant. *Greenway Enters., Inc. v. CSI Eng'g, P.C.*, Civ. No. CBD-07-2762, 2008 WL 11509734, at *1 (D. Md. Dec. 31, 2008) (citing *Brumback v. Callas Contr.*, 913 F. Supp. 929, 934 (D. Md. 1995)); *see also United States v. Johnson*, 953 F.2d 110, 116 (4th Cir. 1991) ("Motions filed out of time are accepted at the discretion of the trial court[.]"). In this case, Defendants have provided correspondence in which they informed Plaintiff's counsel of their intent to file their motion fourteen days after Plaintiff filed his motion. *See* (ECF No. 103-1). Thus, there appears to be no prejudice to Mr. Schoberg, who was aware of Defendants' intent to file their Motion on September 22, 2025. (ECF No. 103-1 at 3.) "Although this Court is certainly displeased with the Defendant[s'] failure to comply with [its] deadlines, notions of judicial economy and fairness militate against a harsh response under the present circumstances" in which there is no evidence of actual prejudice to Mr. Schoberg. *Brumback*, 913 F. Supp. at 934. Plaintiff's Motion to Strike (ECF No. 101) is DENIED.

II.     **Defendants' Motion for Summary Judgment**

In their Motion for Summary Judgment (ECF No. 98), Defendants Schwartzman and Miceli contend that they are entitled to summary judgment as to each of the five claims against them. *See* (ECF No. 98-1 at 4–15). First, they argue that the state and federal constitutional claims alleged in Counts IV and V, respectively, are time-barred, and they are entitled to qualified immunity as to the federal claim in Count V. (*Id.* at 4–5, 14–15.) Second, they assert that they are entitled to summary judgment as to the malicious prosecution claim in Count II because such claims do not apply to warrantless arrests like that at issue here. (*Id.* at 5–6.) Alternatively, they contend that the record establishes that they had probable cause to arrest Mr. Schoberg such that they are entitled to summary judgment as to Counts II, IV, and V. (*Id.* at 6–11.) Next, they argue that they are entitled to summary judgment as to the abuse of process claim in Count III because the record contains no evidence of improper use of process. (*Id.* at 12–13.) Finally, they assert that they are entitled to summary judgment as to Count IX because Plaintiff has demonstrated neither the underlying tort nor the agreement required to establish civil conspiracy under Maryland law. (*Id.* at 13–14.) The Court addresses each claim in turn, grouping some claims together where appropriate.

### A. Count V: Qualified Immunity

"Qualified immunity shields officials from civil liability [under § 1983] so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "To overcome this shield, a plaintiff must demonstrate that: (1) the defendant violated the plaintiff's constitutional rights, and (2) the

right in question was clearly established at the time of the alleged violation." *Id.* (citing *Mullenix*, 577 U.S. at 11–12). A right is clearly established where it "is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 577 U.S. at 12 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Although there need not have been "a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Federal courts in their discretion may conduct this two-step analysis in the order of their choosing. *Balogh v. Virginia*, 120 F.4th 127, 134 (4th Cir. 2024). Importantly, denial of summary judgment as to qualified immunity reflects only that "the forecasted evidence, *when viewed in the light most favorable to [the non-movant]*, established a violation of clearly established law." *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005). Unlike a court determining summary judgment, however, a jury at trial is not required to view the evidence in the light most favorable to Plaintiff and may reach a different conclusion. *Id.*

In their Motion for Summary Judgment, Defendants argue that they are entitled to qualified immunity as to the 42 U.S.C. § 1983 claim in Count V because they acted pursuant to a reasonable belief that they had probable cause to arrest Mr. Schoberg. (ECF No. 98-1 at 14–15.) In Opposition, Mr. Schoberg argues that Defendants' dismissal of their interlocutory appeal as to qualified immunity precludes them from raising the issue at this summary judgment stage.[6] (ECF No. 102-1 at 18.) Mr. Schoberg alleges in Count V that Defendants violated his Second, Fourth, and Fifth Amendment rights by unconstitutionally seizing him

---

[6] Mr. Schoberg cites two Fourth Circuit cases for this proposition, but neither case discusses failure to pursue an interlocutory appeal of qualified immunity. Additionally, the quotes that Mr. Schoberg assigns to one of those cases, *Winfield v. Bass*, 106 F.3d 525 (4th Cir. 1997) (en banc), do not appear therein.

and his property. (ECF No. 25; ECF No. 97 at 2.) Law enforcement officers executing a valid arrest, however, may constitutionally search an individual and seize property incident to that arrest. *United States v. Robinson*, 414 U.S. 218, 224 (1973). Generally, an arrest is constitutional if: (1) it is executed pursuant to a valid arrest warrant; or (2) it is executed upon probable cause. *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("[T]he Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." (citing *Adams v. Williams*, 407 U.S. 143, 148–49 (1972)); *United States v. Van Metre*, 150 F.3d 339, 347 (4th Cir. 1998) (explaining valid arrest warrants preclude assertion of unconstitutional arrest). In this case, it is undisputed that officers arrested Mr. Schoberg without a warrant and seized his property only upon his arrest. Defendants' qualified immunity to the federal claim in Count V thus depends on whether (1) arresting an individual without probable cause is a clearly established right; and (2) officers violated that right in this case. *Adams*, 884 F.3d at 226 (citing *Mullenix*, 577 U.S. at 11–12.)

### i. The right to be free from arrest without probable cause is clearly established

Whether a constitutional right is clearly established is a "purely legal" inquiry, *Willingham*, 412 F.3d at 559, and the defendant asserting qualified immunity bears the burden to establish that a right was *not* clearly established, *Rambert v. City of Greenville*, 107 F.4th 388, 398 (4th Cir. 2024). "Unquestionably, '[t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable.'" *Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 627 (4th Cir. 2007) (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996)). "Thus, there is 'a clearly established Fourth Amendment right to be arrested only upon probable

cause . . . ." *Queen v. Prince George's Cnty., Md.*, 188 F. Supp. 3d 535, 542 (D. Md. 2016) (quoting

*Peters v. City of Mt. Rainier*, Civ. No. GJH-14-955, 2016 WL 1239921, at *4 (D. Md. Mar. 24,

2016)); *McAfee v. Boczar*, 738 F.3d 81, 87 (4th Cir. 2013); *Graham v. Gagnon*, 831 F.3d 176, 182

(4th Cir. 2016). As the Fourth Circuit has explained, however, courts should not frame the

inquiry so broadly and instead must consider "the right to be free from arrest under the

particular circumstances of the case."[7] *Graham*, 831 F.3d at 182 n.1.

"[P]robable cause has been shown 'when the facts and circumstances within an officer's

knowledge—or of which he possesses reasonably trustworthy information—are sufficient in

themselves to convince a person of reasonable caution that an offense has been or is being

committed.'" *McAfee*, 738 F.3d at 87 (quoting *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir.

2000)). "Probable cause 'is not a high bar,' and it must be assessed objectively based on a

totality of the circumstances, including 'common-sense conclusions about human behavior.'"

*United States v. Jones*, 952 F.3d 153, 158 (4th Cir. 2020) (quoting *District of Columbia v. Wesby*, 583

U.S. 48, 58 (2018)). "In assessing the totality of the circumstances, it is appropriate to consider

specifically: an officer's practical experience and the inferences the officer may draw from that

experience[.]" *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004) (citing *Ornelas v.

United States*, 517 U.S. 690, 700 (1996)). In this case, qualified immunity may not apply if,

construing all facts to favor Mr. Schoberg, "it would have been clear to reasonable officers in

---

[7] At first blush, this framing appears to collapse the two-prong inquiry of qualified immunity by implicating under the "clearly established" prong the question of whether officers possessed probable cause for arrest. Distinct from the purely legal clearly established inquiry, which asks only whether it would have been clear to a reasonable officer that probable cause did not exist, *Graham*, 831 F.3d at 182, however, whether an officer actually violated the right to be free of arrest without probable cause under the second prong of the qualified immunity analysis depends on the specific factual circumstances of the case, *see Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005).

[Defendants'] position that they lacked probable cause to arrest [Mr. Schoberg] for violating [Maryland's impersonating a police officer] statute." *Graham*, 831 F.3d at 182.

Construing all facts in the light most favorable to Mr. Schoberg, it would have been clear to a reasonable police officer in Defendants' position that they lacked probable cause to arrest him for impersonating a police officer. *See* (ECF No. 102-4 at 1). Section 3-502(b)–(d) of Maryland's Public Safety Article criminalizes impersonation of a police officer and provides:

> **Impersonating police officer prohibited**
> (b) A person may not, with fraudulent design on person or property, falsely represent that the person is a police officer, special police officer, sheriff, deputy sheriff, or constable.
> **Wearing police articles prohibited**
> (c) Except as provided in subsection (e) of this section, a person may not have, use, wear, or display a uniform, shield, button, ornament, badge, identification, or shoulder patch adopted by the Department of State Police to be worn by its members, insignia, or emblem of office, as is worn by a police officer, sheriff, deputy sheriff, or constable.
> **Imitations of police articles prohibited**
> (d) A person may not, for the purpose of deception, have a simulation or imitation of an article described in subsection (c) of this section as is worn by a police officer, sheriff, deputy sheriff, or constable.

MD. CODE ANN., PUB. SAFETY, § 3-502(b)–(d). In this case, officers at the scene noted that Mr. Schoberg did not say anything to any member of the public to represent himself as a police officer. Officers stated that Mr. Schoberg only wore a shirt emblazoned with the word "POLICE" and carried a handgun for which he provided a permit. Additionally, Mr. Schoberg repeatedly (1) denied ever stating that he was a police officer; (2) stated that he was not a police officer; and (3) informed officers that he worked for "Hire Police." Mr. Schoberg also explicitly told officers that he was not "intentionally misrepresenting" himself as a police officer. Based on these uncontroverted facts, a reasonable police officer could not have

believed that Mr. Schoberg acted "with fraudulent design on person or property" to "falsely represent [himself as] a police officer . . . ."  MD. CODE ANN., PUB. SAFETY, § 3-502(b).

Relatedly, construing all facts to favor Mr. Schoberg, Defendants have not met their burden at this stage to establish that a reasonable officer may have believed that Mr. Schoberg possessed, used, wore, or displayed "a uniform, shield, button, ornament, badge, identification, or shoulder patch adopted by the Department of State Police to be worn by its members, insignia, or emblem of office, as is worn by a police officer, sheriff, deputy sheriff, or constable" or otherwise "for the purpose of deception, ha[d] a simulation or imitation" of any such article.  MD. CODE ANN., PUB. SAFETY, § 3-502(c), (d).[8]  Defendants have not established that Mr. Schoberg had a police badge, patch, shield, button, ornament, identification, uniform, or insignia, or that he otherwise presented documents representing himself as a police officer. Nor do they assert that wearing a shirt that says "POLICE" constitutes wearing a police uniform.  In short, Defendants appear to contend that they based their determination of probable cause solely on the fact that Mr. Schoberg visibly carried a permitted handgun[9] and wore a shirt emblazoned with the word "POLICE," despite the fact that he repeatedly stated that he was not a police officer and worked for Hire Police.[10]

---

[8]  Although Mr. Schoberg was not charged under § 3-502(c) or (d), *see* (ECF No. 102-4 at 1), probable cause is evaluated from the perspective of officers at the time of arrest and "need not be tailored to the offense the arresting officer suspected at the time of arrest."  *Thurston v. Frye*, 99 F.4th 665, 674 n.4 (4th Cir. 2024) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 54 n.2 (2018)).  For this reason, the Court considers for the purposes of qualified immunity whether a reasonable officer may have believed that probable cause existed to arrest Mr. Schoberg under another provision of the statute.

[9]  The Police Report and body-worn camera footage submitted by Defendants suggest that they did not become aware that Mr. Schoberg was carrying an expandable baton, mace, and a knife until they conducted a search incident to arrest.  That is, because officers did not become aware of these items until *after* they decided to arrest Mr. Schoberg, these items could not have contributed to their probable cause to arrest Mr. Schoberg.

[10]  Notably, construing all facts in the light most favor to Mr. Schoberg, the officers repeatedly emphasized that Mr. Schoberg did not "let" them take his handgun, and they allowed him to keep the handgun throughout their

Defendants have not shown that a reasonable officer in their position would believe he had probable cause to arrest Mr. Schoberg for impersonating a police officer based on his appearance. Notably, Officer Miceli seemed aware that Mr. Schoberg's appearance alone was not sufficient to constitute impersonating a police officer because he stated, "[s]omeone coming in here wearing a police shirt, not cooperating not showing credentials, carrying a loaded weapon, you gotta understand that *you're not in uniform* okay, you don't have a radio on you, *nothing that would signify that you are actually police* . . . ." (*Id.* at 2:16–2:28 (emphasis added).) This makes clear that Officer Miceli did not believe Mr. Schoberg was wearing a police uniform and noticed that Mr. Schoberg was *not* wearing any indicia of being an actual police officer, such as a radio. Under these facts, no reasonable officer could have believed that he had probable cause to arrest Mr. Schoberg for impersonating a police officer merely because he (1) wore a shirt emblazoned with the word POLICE; (2) carried a permitted handgun; and (3) upon direct questioning, repeatedly and accurately stated that he worked for Hire Police. For this reason, Mr. Schoberg had a clearly established right to be free of warrantless arrest in this case, and Defendants have not met their burden as to the clearly established prong of qualified immunity. *Graham*, 831 F.3d at 182; *Rambert*, 107 F.4th at 398.

> ii.    **Genuine disputes of material fact exist as to whether Defendants violated Mr. Schoberg's clearly established right.**

"[W]hile the purely legal question of whether the constitutional right at issue was clearly established 'is always capable of decision at the summary judgment stage,' a genuine question of material fact regarding '[w]hether the conduct allegedly violative of the right actually

---

conversation. This strongly suggests that for the duration of the conversation the officers did not believe they had the probable cause required to seize the handgun without a warrant.

occurred ... must be reserved for trial.'" *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (quoting *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)).  It is Mr. Schoberg's burden to establish that Defendants violated his right to be free from warrantless arrest under the circumstances of this case.  *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022).  An officer violates the clearly established right to be free from arrest without probable cause "when no reasonable officer could believe, in light of the contours of the offense at issue, that probable cause exists to arrest that person[.]"  *Queen v. Prince George's Cnty., Md.*, 188 F. Supp. 3d 535, 542 (D. Md. 2016) (quoting *Peters v. City of Mt. Rainier*, Civ. No. GJH-14-955, 2016 WL 1239921, at *4 (D. Md. Mar. 24, 2016)).  Crucially, the burden as to this prong of the analysis rests with Mr. Schoberg, and he has not established that there exist no genuinely disputed facts material to the probable cause inquiry in this case.

Specifically, there exists some genuine dispute of material fact as to whether Mr. Schoberg made any statement to Officer Micelli or behaved in a manner that caused police officers to believe that he was verbally representing himself as a police officer or otherwise behaved in an uncooperative, suspicious manner.  The body-worn camera footage provided begins after Officer Miceli confronted Mr. Schoberg and called for backup.  During the footage, Officer Micelli suggests that Mr. Schoberg did not cooperate with him, but Mr. Schoberg disputes this characterization.  Determination of this dispute depends on the evidence presented at trial and which witnesses the factfinder deems credible.  As explained above, it is the role of the jury to resolve factual disputes, including issues of witness credibility, *see Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014), and this Court in assessing summary judgment "must not weigh evidence or make credibility determinations."  *Foster v. Univ. of Md.-E. Shore*,

787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)).  This genuine dispute as to facts that would have contributed to the development of probable cause—namely Mr. Schoberg's statements and cooperation with Officer Miceli and backup officers prior to the arrival of officers wearing activated body-worn cameras—precludes summary judgment as to qualified immunity.  Nevertheless, as explained further below, the § 1983 claim in Count V is barred by limitations.

### B.  Counts IV and V: Statute of Limitations

Defendants next contend that the state constitutional claims in Count IV and the federal constitutional claims in Count V are time-barred.  Specifically, they assert that Maryland's three-year limitations period for civil actions accrued either when Mr. Schoberg was arrested on July 31, 2019, or when he was released on August 1, 2019.  (ECF No. 98-1 at 4–5.)  Therefore, they contend that Mr. Schoberg had to file his claims no later than August 1, 2022.  *See* (*id.*; ECF No. 104 at 2.)  In Opposition, Mr. Schoberg agrees that a three-year limitations period applies but asserts that the Circuit Court for Baltimore County, Maryland, already rejected any limitations defense, and this Court should adhere to that ruling.[11]  (ECF No. 102-1 at 5–6.)  Alternatively, he argues that the limitations period either did not accrue until the favorable termination of the state criminal case against him or has not yet accrued because BCPD has retained possession of his firearm to date.  (*Id.* at 6–7.)  As explained below,

---

[11] It is not entirely clear from the record whether the state court addressed the statute of limitations as to the § 1983 claim against Defendants in Count V.  Even assuming that the state court did address the limitations defense, however, it could have done so only at the pleading stage.  As the Supreme Court has explained, "[a]fter removal, the federal court 'takes the case up where the State court left it off.'"  *Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Loc. No.* 70, 415 U.S. 423, 436 (1974) (quoting *Duncan v. Gegan*, 101 U.S. 810, 812 (1879)).  In this case, therefore, Defendants are entitled to raise their limitations defense again at this summary judgment stage, and the Court thus considers the defense notwithstanding any state court determination the at the defense did not apply based on the pleadings.

the state constitutional claims based on a theory of improper seizure in Count IV and the federal constitutional claims under 42 U.S.C. § 1983 in Count V are time-barred.  The state constitutional claims based on a theory of malicious prosecution in Count IV, however, are not time-barred because they did not accrue until Mr. Schoberg received a favorable termination of the criminal case against him on June 30, 2020.

### i.    Count IV: State constitutional claims

Claims for constitutional violations under the Maryland Declaration of Rights are subject to the three-year statute of limitations established in Maryland's Courts and Judicial Proceedings Article § 5-101.  *Rich v. Hersl*, Civ. No. ELH-20-488, 2021 WL 2589731, at *11 (D. Md. June 24, 2021) (citing *Barnhill v. Strong*, Civ. No. JFM-07-1678, 2008 WL 544835, at *2 (D. Md. Feb. 25, 2008)).  Under Maryland law, "a cause of action accrues only when the claimant knows or should know of the wrong . . . ."  *Lumsden v. Design Tech Builders, Inc.*, 749 A.2d 796, 801 (Md. 2000).  Generally, violations of Articles 24 and 26 based on improper seizure accrue on the date of the alleged seizure.  *See, e.g.*, *Lancaster v. Smith*, Civ. No. PJM-20-3201, 2021 WL 3511129, at *2 (D. Md. Aug. 10, 2021); *Johnson v. Gondo*, Civ. No. GLR-19-995, 2020 WL 1529002, at *5 (D. Md. Mar. 31, 2020).  Accordingly, to the extent that Mr. Schoberg's state constitutional claim is based on improper seizure, it accrued at the latest upon his release from detention on August 1, 2019, and the three-year statute of limitations terminated on August 1, 2022, nearly one year before he filed this action.  Defendants' Motion for Summary Judgment is GRANTED IN PART as to Count IV to the extent that Count is premised on a theory of false arrest.

In Count IV, however, Mr. Schoberg also alleges due process violations based on malicious prosecution in violation of Article 24 and Article 26 of the Maryland Declaration of Rights.  (ECF No. 25 ¶¶ 68–69, 72–73.)  As Judge Blake of this Court has previously explained, a "claim under the Declaration of Rights based on malicious prosecution theory d[oes] not arise until [plaintiff's] acquittal . . ." or the favorable termination of the case against him.  *Hovatter v. Widdowson*, Civ. No. CCB-03-2904, 2004 WL 2075467, at *8 (D. Md. Sep. 15, 2004); *accord Daulatzai v. Maryland*, 606 F. Supp. 3d 252, 268 (D. Md. 2022) (citing *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000)).  In this case, Mr. Schoberg's criminal prosecution did not terminate in his favor—and the three-year statute of limitations did not accrue—until June 30, 2020.  Thus, the limitations period for any state constitutional claim premised on malicious prosecution expired on June 30, 2023, which is the day Mr. Schoberg initiated this action.  Defendants' Motion for Summary Judgment is DENIED IN PART as to Count IV to the extent it alleges state constitutional violations based on malicious prosecution.

### ii.    Count V: § 1983 and Jurisdiction

As to the 42 U.S.C. § 1983 claim alleged in Count V, "[t]he statute of limitations for § 1983 claims is borrowed from the applicable state's statute of limitations for personal-injury actions, even when a plaintiff's particular § 1983 claim does not involve personal injury."  *Tommy Davis Constr., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 66–67 (4th Cir. 2015) (citing *Wilson v. Garcia*, 471 U.S. 261, 275–80 (1985)).  "In Maryland, the applicable statute of limitations is three years from the date of the occurrence giving rise to the cause of action."  *Deramus v. Montgomery Cnty. Domestic Rels. Section*, Civ. No. GJH-18-2337, 2019 WL 2395311, at *2 (D. Md. June 5, 2019) (citing MD. CODE ANN., CTS. & JUD. PROC. § 5-101).  "Although

state law provides the controlling limitations period, '[t]he time of accrual of a section 1983 action is governed by federal law, and the claim accrues when the affected party knew or should have known of the injury that is the basis of the action.'" *Griffin v. Bishop*, Civ. No. PWG-17-1767, 2018 WL 1525704, at *2 (D. Md. Mar. 28, 2018) (quoting *Halle Dev., Inc. v. Anne Arundel Cnty.*, 121 F. App'x 504, 507 (4th Cir. 2005) (unpublished)); *see also Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975) (collecting cases). Thus, a § 1983 claim based on an improper seizure accrues at the time the seizure occurred.[12] *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 183 (4th Cir. 1996). In this case, Mr. Schoberg's § 1983 claim in Count V accrued on July 30, 2019, when he was arrested, and the limitations period terminated on July 30, 2022. Mr. Schoberg did not file this matter until June 30, 2023, such that his § 1983 claim is time-barred. Defendants' Motion for Summary Judgment is GRANTED as to Count V.

Notably, dismissal of the sole remaining federal claim in Count V necessarily raises this Court's significant discretion to exercise supplemental jurisdiction over the remaining state-law claims in Counts II, III, IV, and IX.[13] Under 28 U.S.C. § 1367(a), a federal court may

---

[12] Mr. Schoberg argues that, under *Heck v. Humphrey*, 512 U.S. 477 (1994) and *McDonough v. Smith*, 588 U.S. 109 (2019), his § 1983 claim did not accrue until the termination of the state criminal proceedings in his favor on June 30, 2020, (ECF No. 102-1 at 4, 6). *McDonough* makes clear that the accrual of the statute of limitations under § 1983 depends on "'the specific constitutional right' alleged to have been infringed," and addressed accrual solely as to fabricated evidence claims, which are not at issue in this case. 588 U.S. at 115 (quoting *Manuel v. Joliet*, 580 U.S. 357, 370 (2017)). Relatedly, the Fourth Circuit in *Brooks v. City of Winston Salem, N.C.*, 85 F.3d 178 (4th Cir. 1996), squarely foreclosed Mr. Schoberg's argument that his § 1983 claim accrued only after the termination of the state criminal proceedings against him in 2020, holding that:

> *Heck* [does not] compel a conclusion that all claims of unconstitutional seizure accrue only upon a termination of the criminal proceedings favorable to the § 1983 plaintiff. *Heck* did not purport to address the accrual of a § 1983 cause of action for damages resulting from actions that would not implicate the validity of a conviction or sentence. And, a charge that probable cause for a warrantless arrest was lacking, and thus that the seizure was unconstitutional, would not necessarily implicate the validity of a subsequently obtained conviction—at least in the usual case.

*Id.* at 182.

[13] As noted above, this action was removed to this Court based on federal question jurisdiction based in-part on the § 1983 claim in Count V. *See* (ECF No. 5). Dismissal of that claim leaves only state-law claims remaining.

exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy[,]" but a court may also decline to exercise such jurisdiction where it "has dismissed all claims over which [it] has original jurisdiction," *id.* § 1367(c). "A court has 'wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished.'" *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995)).

To determine whether to retain supplemental jurisdiction in their discretion, federal courts should consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110. A district court does not abuse its discretion to exercise supplemental jurisdiction where there has been substantial federal litigation, few state claims remain, and federal claims are dismissed on the eve of trial. *See Crosby v. City of Gastonia*, 635 F.3d 634, 644 & n.11 (4th Cir. 2011) (affirming exercise of supplemental jurisdiction where "convenience and fairness to the parties plus concerns for judicial economy[] weighed heavily in favor of retaining supplemental jurisdiction" because "[b]y the time judgment had been entered below, the proceedings had been pending for more than three years, and the parties had already fully briefed summary judgment motions"); *Peter Farrell Supercars, Inc. v. Monsen*, 82 F. App'x 293, 297 (4th Cir. 2003) (unpublished) (affirming exercise of supplemental jurisdiction where "parties had completed substantial pretrial preparation," the court "was already familiar with the facts and issues," and remand "would not have been fair to the parties, and also would not have been an efficient use of judicial resources"); *Daly v. Zobel*, 311 F.

App'x 565, 567 (4th Cir. 2008) (unpublished) (affirming retention of supplemental jurisdiction over state malicious prosecution claim where "action had progressed to the summary judgment stage, and a remand to state court would be a waste of judicial resources").

In this case, convenience, fairness to the parties, comity, and judicial economy strongly favor retention of supplemental jurisdiction over the remaining state-law claims in Counts II, III, IV, and IX.  The parties have already completed substantial trial preparation, including more than two years of litigation in this Court, an interlocutory appeal to the Fourth Circuit, and fully briefed summary judgment motions.  *See Crosby*, 635 F.3d at 644 n.11 (noting years of litigation and complete briefing of summary judgment favor retention of supplemental jurisdiction).  Moreover, trial is upcoming in January 2026, and the Court is familiar with the facts and issues in this case based on its decisions regarding summary judgment, multiple motions to dismiss, and Defendants' motion for reconsideration.  This Court has already finally adjudicated most of the claims in Mr. Schoberg's Amended Complaint, and the four remaining state-law claims are routinely subject to federal litigation and present no novel legal issues.  *See, e.g.*, *Nalls v. Bal. Cnty., Md.*, Civ. No. ELH-23-0183, 2024 WL 1140688 (D. Md. Mar. 15, 2024) (addressing malicious prosecution and violations of Articles 24 and 26 of Maryland Declaration of rights); *Middleton v. Koushall*, Civ. No. ELH-20-3536, 2024 WL 1967816 (D. Md. May 3, 2024) (addressing malicious prosecution, abuse of process, violations of Articles 24 and 26 of Maryland Declaration of rights, and conspiracy under Maryland law); *Martin v. Conner*, 882 F. Supp. 2d 820 (D. Md. 2012) (addressing malicious prosecution, abuse of process, violations of Article 26 of Maryland Declaration of Rights, and conspiracy under Maryland law).  Thus, convenience, fairness to the parties in consideration of the substantial

litigation they have completed in this Court, comity, and concerns of judicial economy heavily favor retention of supplemental jurisdiction over the claims at issue.

### C.  Count II: Malicious Prosecution

"Under Maryland law, '[t]he elements of malicious prosecution are: (1) a criminal proceeding instituted or continued by the defendant against the plaintiff; (2) without probable cause; (3) with malice, or with a motive other than to bring the offender to justice; and (4) termination of the proceedings in favor of the plaintiff." *Nalls v. Balt. Cnty., Md.*, Civ. No. ELH-23-0183, 2024 WL 1140688, at *34 (D. Md. Mar. 15, 2024) (quoting *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000)).  A police officer who files a statement of charges has initiated a criminal proceeding for the purposes of a malicious prosecution claim.[14]   *See Brooks v. McKimmie*, Civ. No. DLB-23-0208, 2025 WL 1018882, at *8 (D. Md. Apr. 4, 2025).  In this

---

[14]  Defendants argue that malicious prosecution claims are not appropriate where a plaintiff was arrested without a warrant.  *See* (ECF No. 98-1 at 5 (citing *Green v. Zendrian*, 916 F. Supp. 493, 499 (D. Md. 1996)).  As discussed above, although this Court and the Fourth Circuit have recognized that malicious prosecution claims brought under the Fourth Amendment are inappropriate where the plaintiff was arrested without a warrant, *see, e.g.*, *Smith v. Munday*, 848 F.3d 248, 257 (4th Cir. 2017), this Court has repeatedly recognized that common-law malicious prosecution claims like that at issue in this case may lie where the plaintiff was subject to warrantless arrest.  *See, e.g.*, *Brooks v. McKimmie*, Civ. No. DLB-23-0208, 2025 WL 1018882, at *8 (D. Md. Apr. 4, 2025); *Middleton*, 2024 WL 1967816, at *39–44 (declining to grant summary judgment for malicious prosecution claim premised on warrantless arrest).  This reflects that "the two claims are complimentary."  *Wilson v. Town of Mt. Jackson*, 2022 WL 819531, at *6 (W.D. Va. Mar. 17, 2022).  Thus, if a plaintiff is arrested without a warrant and "those same officers later have the plaintiff charged by a magistrate, a malicious prosecution claim allows plaintiff to recover damages accrued from that point forward."  *Id.* (citing *Brooks*, 85 F.3d at 181–82); *Brooks*, 85 F.3d at 182 ("However, allegations that an arrest made pursuant to a warrant was not supported by probable cause, *or claims seeking damages for the period after the legal process issued*, are analogous to the common-law tort of malicious prosecution." (emphasis added) (citing *Heck*, 512 U.S. at 483–84)); *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 3 (1st Cir. 1995) ("The interest at stake in a malicious prosecution claim is the right to be free from deprivations of liberty interests caused by unjustifiable criminal charges and procedures."); *Heck*, 512 U.S. at 484 ("If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.  But a successful malicious prosecution plaintiff may recover, in addition to general damages, compensation for any arrest or imprisonment, including damages for discomfort or injury to his health, or loss of time and deprivation of society." (internal citations and quotation marks omitted)).  For this reason, although Mr. Schoberg cannot raise a malicious prosecution claim based on his warrantless arrest, he may raise such a claim based on the subsequent charges filed against him.  *See* (ECF No. 102-4).

case, there is no dispute that Officer Schwartzman filed the statement of charges against Mr. Schoberg, *see* (ECF No. 102-4; ECF No. 104 at 3), or that the state criminal proceedings terminated in Mr. Schoberg's favor.[15] As explained further below, however, the existence of genuine disputes of material fact precludes summary judgment as to Count II.

As an initial matter, Officer Miceli is not entitled to summary judgment as to the malicious prosecution claim against him in Count II even though only Officer Schwartzman formally filed the Statement of Charges against Mr. Schoberg. "One who instigates or aids and assists in a criminal prosecution may be liable [for malicious prosecution] regardless of whether he swears out a warrant." *Wood v. Palmer Ford, Inc.*, 425 A.2d 671, 677 (Md. Ct. Spec. App. 1981) (quoting *Safeway Stores, Inc. v. Barrack*, 122 A.2d 457, 460 (Md. 1956)). Thus, "it is irrelevant that Officer [Miceli] did not swear out the [Statement of Charges] for Plaintiff because an individual may still be liable when he 'inspire[s] in any fashion a criminal proceeding against the (plaintiff) within the contemplation of the law of torts.'" *Crouch v. City of Hyattsville*, Civ. No. DKC-09-2544, 2012 WL 6019296, at *3 (D. Md. Nov. 30, 2012) (quoting *Smithfield Packing Co., Inc. v. Evely*, 905 A.2d 845, 854 (Md. Ct. Spec. App. 2006)). Significantly, an officer who did not initiate charges but presented false information may be held liable for malicious prosecution. *Id.* In this case, construing the facts in the light most favorable to Mr. Schoberg, a reasonable jury could conclude that Officer Miceli provided inconsistent information to Officer Schwartzman and the responding officers.

---

[15] Defendants initially argued that Mr. Schoberg offered no evidence that Defendants initiated proceedings against him, (ECF No. 98-1 at 5–6), but appear to concede that the Statement of Charges (ECF No. 102-4) filed by Mr. Schwartzman constitutes initiation of proceedings. *See* (ECF No. 104 at 3).

Officer Miceli's statements to Mr. Schoberg at the Giant could cause a reasonable jury to believe that he did not actually believe Mr. Schoberg was a police officer.  Officer Miceli stated, "[s]omeone coming in here wearing a police shirt, not cooperating not showing credentials, carrying a loaded weapon, you gotta understand that *you're not in uniform* okay, you don't have a radio on you, *nothing that would signify that you are actually police . . . .*"  (ECF No. 69 Ex. A at 2:16–2:28 (emphasis added).)  Similarly, he asked where Mr. Schoberg acquired the holster for his handgun because it looked "like something [one] would get at Walmart for an airsoft gun."  (*Id.* at 13:22–13:33.)  Construed in the light most favorable to Mr. Schoberg, these comments suggest that, at least at the scene, Officer Miceli did not actually believe that Mr. Schoberg was a police officer.  Yet, the Statement of Charges and case report filed by Officer Schwartzman suggest that Officer Miceli believed Mr. Schoberg was actually a police officer.[16]  *See* (ECF No. 104-2 at 1 ("Believing Suspect Schoberg to be-an actual police officer, Officer Miceli engaged in conversation with Suspect Schoberg.")).  These discrepancies are sufficient to create a genuine dispute of material fact as to whether Officer Miceli mistook Mr. Schoberg for a police officer or otherwise informed officers that he believed Mr. Schoberg was a police officer, and that dispute depends at least in part on the factfinder's determination witnesses' credibility at trial.  Accordingly, construing the facts in the light most favorable to

---

[16] Mr. Schoberg argues that consideration of the case report is improper because it contains hearsay evidence. (ECF No. 101 at 5.)  In adjudicating a motion for summary judgment, however, a court may consider evidence presented in a form inadmissible at trial if "it [is] clear that [the movant] could present the content in an admissible form at trial."  *Butler v. Wash. Metro. Area Transit Auth.*, Civ. No. AAQ-22-2711, 2025 WL 1018942, at *4 (D. Md. Apr. 4, 2025) (citing *U.S. Dep't of Housing and Urban Dev't v. Cost Control Mktg. & Sales Mgt. of Va., Inc.*, 64 F.3d 920, 926 n.8 (4th Cir. 1995)).  In this case, Defendants could present the information in the case report in a form admissible at trial by presenting witness testimony.

Mr. Schoberg, summary judgment as to the malicious prosecution claim against Officer Miceli in Count II is not appropriate.

Nor is Officer Schwartzman entitled to summary judgment as to Count II. Defendants assert that they are entitled to summary judgment because Mr. Schoberg has not shown that they lacked probable cause to charge him. As explained above, "probable cause has been shown 'when the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed.'" *McAfee v. Boczar*, 738 F.3d 81, 87 (4th Cir. 2013) (quoting *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000)). It "is 'not a high bar,' and it must be assessed objectively based on a totality of the circumstances, including 'common-sense conclusions about human behavior.'" *United States v. Jones*, 952 F.3d 153, 158 (4th Cir. 2020) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 58 (2018). Courts may consider "an officer's practical experience and the inferences the officer may draw from that experience." *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004). In this case, there exist genuine disputes of material facts as to whether the officers had probable cause to believe Mr. Schoberg was impersonating a police officer.

Section 3-502(b) of Maryland's Public Safety Article prohibits impersonating a police officer:

> (b) A person may not, with fraudulent design on person or property, falsely represent that the person is a police officer, special police officer, sheriff, deputy sheriff, or constable.

MD. CODE ANN., PUB. SAFETY, § 3-502(b).[17]  Beginning with the facts that are not genuinely disputed, officers on the scene repeatedly confirmed to one another that Mr. Schoberg wore a shirt emblazoned with the word "POLICE" and carried a handgun for which he provided a permit.  Additionally, the body-worn camera footage shows that Mr. Schoberg repeatedly (1) denied ever stating that he was a police officer, (2) said that he was not a police officer, and (3) told officers that he worked for "Hire Police."  Mr. Schoberg explicitly stated that he was not "intentionally misrepresenting" himself as a police officer.  Finally, it is undisputed that Mr. Schoberg possessed a permitted handgun, expandable baton, mace, knife, and badge identifying him as a private investigator.  There exist genuine disputes of material fact, however, as to (1) the nature of the interaction between Officer Miceli and Mr. Schoberg prior to the arrival of on-duty officers; and (2) Officer Schwartzman's knowledge of that interaction.

As discussed above, there exists a genuine dispute of material fact as to whether Mr. Schoberg cooperated with Officer Miceli when Officer Miceli originally approached him at the Giant grocery store.  Mr. Schoberg repeatedly states that he was cooperative, while Officer Miceli disputes that characterization.  This dispute hinges on whether the factfinder deems Officer Miceli or Mr. Schoberg more credible, and thus the Court cannot determine this dispute at this summary judgment stage.  *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 248 (4th Cir. 2015).  Similarly, it is unclear from the record what information Officer Miceli and other officers had relayed to Officer Schwartzman by the time he arrived at the scene.  These facts

---

[17]  As noted above, malicious prosecution claims accrue at the time legal proceedings are initiated against the plaintiff.  In this case, Officer Schwartzman filed a Statement of Charges charging Mr. Schoberg only under § 3-502(b).  (ECF No. 102-4 at 1.)  This Court therefore evaluates probable cause solely as to that Section and considers the information available to Officer Schwartzman at the time he filed the Statement of Charges.

would have been critical to Officer Schwartzman's determination of whether Mr. Schoberg made any statements to officers that suggested he was trying to impersonate a police officer. While Mr. Schoberg maintained that he never stated that he was a police officer, Officer Miceli suggested that he was uncooperative and made statements that made Officer Miceli suspicious. It is unclear whether Officer Schwartzman had knowledge of those statements.

Relatedly, there exists a genuine dispute of material fact as to whether Officer Schwartzman reasonably believed Mr. Schoberg intentionally misrepresented himself as a police officer. Mr. Schoberg informed police officers that his employer required him to wear a shirt emblazoned with the word "POLICE," which would tend to weigh against any determination that he acted with the required "fraudulent design" by wearing the shirt. Yet, Cpl. McCollum stated that Mr. Lewis suggested that the only requirement was to wear a shirt bearing the company's name or "SECURITY," and Officer Schwartzman's case report states that Mr. Lewis informed him that only employees who are current police officers are permitted to wear clothing that identify them as police. (ECF No. 104-2 at 3–4.)

Finally, there exist genuine disputes of material fact as to whether Defendants acted with malice. As this Court has explained, "[m]alice is defined as 'conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.'" *Middleton v. Koushall*, Civ. No. ELH-20-3536, 2024 WL 1967816, at *40 (D. Md. May 3, 2024) (internal quotations marks omitted) (quoting *Lewis v. Caraballo*, 98 F.4th 521, 537 (4th Cir. 2024)). This inquiry is "'subjective,' and thus is 'generally a question for the jury.'" *Id.* (quoting *Lewis*, 98 F.4th ats 537). Moreover, malice may be "inferred from acts and circumstantial evidence" including "from a lack of probable cause." *Id.* (first quoting *E.W. ex rel. T.W. v.*

*Dolgos*, 884 F.3d 172, 187 (4th Cir. 2018); and then quoting *Okwa v. Harper*, 757 A.2d 118, 133 (Md. 2000)).    Here, the existence of genuine disputes as to material facts underlying Defendants' determination of probable cause also create a genuine factual dispute as to whether they acted with malice by charging Mr. Schoberg.    The subjective and circumstantial nature of malice render it an appropriate determination for the jury at trial.    Thus, summary judgment is DENIED as to Count II.

### D. Count IV: Theory of Malicious Prosecution

Relatedly, Defendants argue that Count IV must be dismissed because Mr. Schoberg has not shown that either officer arrested him or seized his property without probable cause. Mr. Schoberg does not clarify under which Article of the Maryland Declaration of Rights he alleges constitutional violation based on prosecution without probable cause.    "The Maryland Supreme Court has recognized that Article 26 is construed *in pari materia* with the Fourth Amendment while Article 24 is construed *in pari materia* with the Due Process Clause of the Fourteenth Amendment."    *Harried v. Maryland*, Civ. No. TDC-24-1190, 2024 WL 4817107, at *7 (D. Md. Nov. 18, 2024).    The United States Supreme Court has held that "it is the Fourth Amendment, and not substantive due process, under which" a claim of a violation of the right "to be free from criminal prosecution except upon probable cause" "must be judged."    *Albright v. Oliver*, 510 U.S. 266, 269, 271, 270 (1994); *see also Smith v. Munday*, 848 F.3d 248, 252–53 (4th Cir. 2017).    Thus, the Court addresses the alleged due process violation in Count IV under Article 26, which is analogous to the Fourth Amendment such that "the elements of malicious prosecution and the standard for probable cause are identical to [those in a] federal constitutional claim."    *Nalls v. Baltimore Cnty., Md.*, Civ. No. ELH-23-0183, 2024 WL 1140688,

at *34 (D. Md. Mar. 15, 2024) (quoting *Talley v. Anne Arundel Cnty.*, Civ. No. RDB-21-0347, 2021 WL 4244759, at *10 (D. Md. Sep. 17, 2021)).

To state a claim of malicious prosecution under the Fourth Amendment—and therefore under Article 26 of the Maryland Declaration of Rights—a plaintiff must demonstrate "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Nalls*, 2024 WL 1140688, at *34 (quoting *Hupp v. Cook*, 931 F.3d 307, 324 (4th Cir. 2019)). As a threshold matter, although Officer Miceli did not formally file charges against Mr. Schoberg, the same genuine disputes of material fact that preclude summary judgment as to Officer Miceli as to the common law malicious prosecution claim in Count II also preclude summary judgment as to the constitutional claim based on the same theory in Count IV.

Although Defendants argue that they were not the officers who directly or physically arrested Mr. Schoberg, this argument is not relevant to a theory of malicious prosecution. As noted above, claims for malicious prosecution attach only upon the initiation of legal process. In this case, Mr. Schoberg was arrested without a warrant such that legal process against him began only after Officer Schwartzman filed a statement of charges against him. Therefore, the undisputed facts establish that Officer Schwartzman caused the seizure of Mr. Schoberg pursuant to legal process, *see Nalls*, 2024 WL 1140688, at *34, and, as discussed above, there exists a genuine dispute of material fact as to whether Officer Miceli contributed to that seizure pursuant to legal process by providing inconsistent information. Moreover, for the same reasons discussed above as to Count II, there exist genuine disputes of material fact as to whether Defendants had probable cause to believe Mr. Schoberg impersonated a police officer

at the time Officer Schwartzman filed the Statement of Charges on July 31, 2019. Defendants' Motion is DENIED as to the state constitutional claim under a theory of malicious prosecution in Count IV.

### E. Count III: Abuse of Process

Unlike malicious prosecution, "[a]buse of process is concerned with the improper use of criminal or civil process in a manner not contemplated by law after it has been issued, without the necessity of showing lack of probable cause or termination of the proceeding in favor of the plaintiff . . . ." *Traore v. Balt. Police Dep't*, Civ. No. MJM-22-0793, 2023 WL 8600553, at *28 (D. Md. Dec. 12, 2023) (quoting *One Thousand Fleet Ltd. P'ship v. Guerriero*, 694 A.2d 952, 956 (Md. 1997)). "To sustain a cause of action for abuse of process, the plaintiff must prove: [1] that the defendant willfully used process after it has issued in a manner not contemplated by law; [2] that the defendant acted to satisfy an ulterior motive; . . . [3] that damages resulted from the defendant's perverted use of process;" and [4] that "an unlawful arrest or seizure of property [occurred] to support the damages element of" the claim. *Lilly v. Balt. Police Dep't*, 694 F. Supp. 3d 569, 593 (D. Md. 2023) (collecting Maryland cases). Importantly, "the 'mere issuance of process itself . . . is not actionable, even if it is done with 'ulterior motive' or 'bad intention.'" *Id.* (quoting *Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1044 (2004) (Md. Ct. Spec. App. 2004)); *accord Palmer Ford, Inc. v. Wood*, 471 A.2d 297, 311 (Md. 1984).

Rather, abuse of process requires "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process[.]" *Wood v. Palmer Ford, Inc.*, 425 A.2d 671, 679 (Md. Ct. Spec. App. 1981) (quoting Prosser, Law of Torts 857

(4th ed. 1971)).  "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.  There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance of any formal use of process itself, which constitutes the tort."  *Id.* at 680 (quoting Prosser, Law of Torts 857 (4th ed. 1971)).

In this case, the undisputed facts in the record establish no improper purpose, and Mr. Schoberg has identified no additional or disputed facts that could give rise to such improper purpose.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (explaining where party seeking summary judgment establishes the absence of any genuine dispute of material fact, nonmovant bears the burden to come forward with specific facts establishing such a dispute).  As explained above, where an individual is arrested without a warrant and later charged, legal process is not initiated until the charges have been filed.  *See Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 368 (2017) (distinguishing "(pre-legal-process) arrest" from "(post-legal process) pretrial detention").  Accordingly, Mr. Schoberg was not subject to legal process until charges were filed against him on July 31, 2019.  To succeed as to his abuse of process claim, therefore, he must demonstrate that Defendants used such process for an ulterior motive *after* July 31, 2019. *See Wood*, 425 A.2d at 679–80.  He has not identified any facts in the record that would establish such abuse of process.

At most, Mr. Schoberg offers the reports of his proffered expert,[18] Rodney Hill, who opines that Defendants acted with retaliatory motive when they stopped, arrested, and detained Mr. Schoberg. *See generally* (ECF No. 69-4; ECF No. 102-5). Mr. Hill's reports constitute opinion testimony inappropriate for consideration at summary judgment and pertain almost entirely to the initial stop and arrest of Mr. Schoberg, which occurred *before* the initiation of process. *See Manuel*, 580 U.S. at 368. Although there exist disputes of material fact regarding whether Defendants acted with malice or other ulterior motive by stopping, arresting, and initiating process against Mr. Schoberg, such malice or ulterior motive is insufficient absent additional evidence of subsequent use of process for collateral advantage. *Att'y Grievance Comm'n of Md. v. Roberts*, 904 A.2d 557, 571 (Md. 2006). The record before this Court is devoid of facts regarding any interaction between Defendants and Mr. Schoberg between the time the charges were filed against him on July 31, 2019, and the time the State's Attorney entered a nolle prosequi in his state case in 2020. Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to the abuse of process claim in Count III.

### F. Count IX: Civil Conspiracy

Finally, Defendants are not entitled to summary judgment as to the civil conspiracy claim alleged against them in Count IX. "Under Maryland law, civil conspiracy is defined as 'the combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff.'"

---

[18] This Court has not designated any experts in this matter and, even if it had, consideration of such expert testimony is a matter for the factfinder at trial.

*Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014) (quoting *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005)).  "Civil conspiracy requires proof of three elements: '(1) a confederation of two or more persons by agreement or understanding; (2) [s]ome unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not itself illegal; and (3) [a]ctual legal damage resulting to the plaintiff.'" *Hernandez v. Lloyd*, Civ. No. JRR-23-1016, 2024 WL 1329297, at *15 (D. Md. Mar. 28, 2024) (quoting *Windesheim v. Larocca*, 116 A.3d 954, 975 (Md. 2015)).  "Civil conspiracy is not an independent cause of action under Maryland law, and a 'defendant's liability for civil conspiracy depends entirely on its liability for a substantive tort.'"  *Lilly*, 694 F. Supp. 3d at 592 (internal citations omitted) (quoting *Fare Deals, Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 692 (D. Md. 2001)).

As explained above, genuine disputes of material fact preclude summary judgment as to some of Mr. Schoberg's tort and state constitutional claims such that Defendants have not shown as a matter of law that they did not commit an underlying unlawful act.  Moreover, "civil conspiracy 'may be established by inference from the nature of the acts complained of, the individual and collective interest of the conspirators, the situation and relation of the parties at the time of the commission of the acts, the motives which produced them, and all the surrounding circumstances preceding and attending the culmination of the common design." *Windesheim*, 116 A.3d at 975 (quoting *Hoffman*, 867 A.2d at 291); *Great Am. Ins. Co. v. Nextday Network Hardware Corp.*, 73 F. Supp. 3d 636, 643 (D. Md. 2014) ("Proof of civil conspiracy, however, can be in the form of circumstantial evidence." (citing *Daugherty v. Kessler*, 286 A.2d 95, 101 (Md. 1972)).  In this case, construing the facts in the light most favorable to

Mr. Schoberg, there exist genuine disputes of material fact as to the existence of an agreement between Officers Schwartzman and Miceli.

Officer Schwartzman's case report includes a paragraph describing the interaction between Mr. Schoberg and Officer Miceli prior to Officer Schwartzman's arrival on the scene. *See* (ECF No. 104-2 at 3.)  The case report includes information about Officer Miceli's beliefs and suspicions, which Officer Schwartzman could only have learned from communications with Officer Miceli.  *See* (*id.*)  Similarly, as noted above, some of the statements that Officer Miceli made in the body-worn camera footage in the record could suggest that he did not believe Mr. Schoberg was a police officer, but the subsequent case report states that "[t]he tee shirt, handgun, and equipment being worn by Suspect Schoberg caused a police officer to believe him to be actual police upon immediate sight" and that Officer Miceli originally approached Mr. Schoberg because he believed that he was a police officer.  (*Id.* at 4.)  At trial, a reasonable factfinder could determine that such discrepancies establish by inference some agreement between Officer Miceli and Officer Schwartzman as to their version of the events that transpired at the Giant Food Store.  Accordingly, summary judgment is DENIED as to the civil conspiracy claim in Count IX.

### III.    Plaintiff's Supplemental Motion for Summary Judgment

Finally, for very similar reasons, Plaintiff is not entitled to summary judgment as to his malicious prosecution claim in Count II, his state constitutional claim based on a theory of malicious prosecution in Count IV, or his civil conspiracy claim in Count IX.[19]  As an initial

---

[19]  For the reasons discussed above, Defendants are entitled to summary judgment as to the state constitutional claims based on improper seizure in Count IV and federal constitutional claims under § 1983 in Count V. Accordingly, the Court does not address Plaintiff's arguments for summary judgment as to those claims.

matter, Defendants argue that Plaintiff's request for summary judgment is not properly before this Court because Plaintiff's original Motion for Summary Judgment (ECF No. 69), including any exhibits, was withdrawn without prejudice and subject to refiling, *see* (ECF No. 78), but Mr. Schoberg never formally refiled that Motion. They argue that the Court's consideration of summary judgment as to Mr. Schoberg is limited to his Supplemental Motion for Summary Judgment (ECF No. 97) and any exhibits attached thereto. These arguments are unavailing. This Court explicitly set a pretrial dispositive motions deadline in the same Amended Scheduling Order in which it denied Plaintiff's original Motion for Summary Judgment without prejudice and subject to refiling, *see* (ECF No. 78); Defendants have submitted electronic correspondence with Plaintiff's counsel in which defense counsel discussed Plaintiff's intent to supplement his original Motion by the deadline set by this Court, *see* (ECF No. 103-1); and Plaintiff's Supplemental Motion (ECF No. 97) is designated as a pending motion on this Court's docket and references his original Motion for Summary Judgment, *see* (*id.* at 1). Nevertheless, even upon consideration of Mr. Schoberg's original Motion for Summary Judgment (ECF No. 69), its exhibits, and his Supplemental Motion (ECF No. 97), he has not established entitlement to summary judgment as to Counts II, IV, and IX. Accordingly, Mr. Schoberg's Supplemental Motion (ECF No. 97) is DENIED.

In a motion for summary judgment, "[t]he moving party bears the burden of showing that there is no genuine dispute of material facts." *Brocious v. U.S. Steel Corp.*, 429 F. Supp. 3d 82, 86 (D. Md. 2019) (citing *Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011)). The Supreme Court has explained that a moving party meets this burden by establishing initially that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*,

477 U.S. at 325.  Once the moving party has met this burden, the burden shifts to the non-moving party to demonstrate that there exists a genuine issue of fact for trial.  *Brocious*, 429 F. Supp. 3d at 86.  In this case, Mr. Schoberg has not met his burden to show that there is an absence of evidence to support Defendants' case that they had probable cause to arrest him. Accordingly, he has not met his initial burden, and he is not entitled to summary judgment as to any of his remaining claims.

As to the common-law malicious prosecution claim in Count II and the state constitutional claim under the same theory in Count IV, Mr. Schoberg has not shown that there is an absence of evidence that could support probable cause.  As explained above, both common law malicious prosecution and a constitutional claim based on malicious prosecution require the plaintiff to establish that legal process was initiated without probable cause.  *See Nalls v. Baltimore Cnty., Md.*, Civ. No. ELH-23-0183, 2024 WL 1140688, at *34 (D. Md. Mar. 15, 2024).  Thus, to establish entitlement to summary judgment, Mr. Schoberg must first establish that there is no genuine dispute of material fact as to whether Defendants initiated legal process against him without probable cause.  He contends that the officers' body-worn camera footage establishes that he "repeatedly denied being a police officer, voluntarily identified himself as an employee of 'Hire Police,' presented both his valid Maryland Private Detective's license and his Maryland Handgun Wear and Carry permit, and has his employment and active licensure confirmed through direct contact with his employer."  (ECF No. 97 at 4, 5.)  He also contends that several officers stated that they did not believe that he was a police officer, and one officer noted that no members of the public perceived him as a

police officer.  (*Id.*)  Finally, he argues that Defendants fabricated or exaggerated events in the charging documents.[20]  (*Id.* at 4.)

Although a court considering cross-motions for summary judgment must address each motion separately and must construe all facts relevant to each motion to favor the non-moving party, the same factual disputes that preclude summary judgment as to the Defendants also preclude summary judgment as to Mr. Schoberg in this case.  *See Defs. of Wildlife v. North Carolina Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)).  In this case, the existence of probable cause is outcome determinative as to Counts II and IV, and, as detailed above, the civil conspiracy claim in Count IX depends on Counts II and IV.  As explained above, genuine disputes of material fact exist as to whether (1) Defendants genuinely mistook Mr. Schoberg as a police officer; (2) Officer Miceli provided inaccurate information—including whether Mr. Schoberg cooperated with his initial questioning—regarding his interaction with Mr. Schoberg prior to the arrival of other officers; and (3) Officer Schwartzman believed that Mr. Schoberg acted with intent to deceive.  Construing all facts to favor Defendants, such disputed facts material to the existence of probable cause preclude summary judgment.

Specifically, while the case report suggests that Officer Miceli genuinely mistook Mr. Schoberg for a police officer when he initially approached him, the body-worn camera footage provided to the Court shows that Officer Miceli stated that he understood that Mr. Schoberg was not trying to act as a police officer.  Similarly, while some officers stated that Mr. Schoberg

---

[20] Mr. Schoberg also references the reports of his proffered but not-yet qualified expert, Mr. Hill, in support of summary judgment, but the Court cannot consider such reports because they constitute opinion testimony and witness credibility is a question for the finder of fact at trial.  *See Tolan v. Cotton*, 572 U.S. 650, 656–59 (2014).

never engaged in any verbal actions that would have led others to believe that he was a police officer, several officers suggest that wearing a shirt that says "POLICE" would lead other people to believe one is a police officer.  Relatedly, Mr. Schoberg stated to officers that the shirt bearing the words "POLICE" was part of his required uniform, but Officer Schwartzman represented in his case report that Mr. Lewis stated that only active police officers are permitted to wear such shirts.  This discrepancy is significant because it tends to establish a dispute as to Mr. Schoberg's intent to mislead, which is a required element of impersonating a police officer.  Thus, Mr. Schoberg has not met his threshold burden to show the absence of evidence that could have given rise to probable cause, as would be required to award summary judgment as to the malicious prosecution claim in Count II and the state constitutional claim under the same theory in Count IV.  *See Celotex Corp.*, 477 U.S. at 325.

For the same reason, Mr. Schoberg has not demonstrated his entitlement to summary judgment as to the civil conspiracy claim in Count IX.  As explained above, a defendant's liability for civil conspiracy "depends entirely on its liability for a substantive tort." *Lilly*, 694 F. Supp. 3d at 592 (internal citations omitted) (quoting *Fare Deals, Ltd.*, 180 F. Supp. 2d at 692).  Plaintiff's failure to demonstrate entitlement to summary judgment as to Counts II and IV, the substantive tort claims underlying his civil conspiracy claim, thereby precludes summary judgment as to the civil conspiracy claim in Count IX.  Accordingly, Plaintiff's Supplemental Motion for Summary Judgment (ECF No. 97) is DENIED.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Strike (ECF No. 101) is DENIED; Plaintiff's Supplemental Motion for Summary Judgment (ECF No. 97) is DENIED; and Defendants' Motion for Summary Judgment (ECF No. 98) is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' Motion (ECF No. 98) is DENIED with respect to Count II (malicious prosecution); Count IX (civil conspiracy); and Count IV (violation of the Maryland Declaration of Rights) to the extent that it is based on malicious prosecution. Defendants' Motion (ECF No. 98) is GRANTED as to Count III (abuse of process); Count V (violation of 42 U.S.C. § 1983); and Count IV (violation of the Maryland Declaration of Rights) to the extent it is based on any theory other than malicious prosecution. This case shall proceed to a jury trial in January 2026.

A separate Order follows.

Date: December 16th, 2025

/s/

_____
Richard D. Bennett
United States Senior District Judge